WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Wassef and Angela Wassef, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>JPMorgan Chase Bank, N.A.; U.S. Bank National Association, as Trustee for J.P. Morgan Mortgage Acquisition Trust 2006-CH2, Asset Backed Pass-Through Certificates, Series 2006-CH2,<br><br>Defendants. | No. CV-12-02480-PHX-DGC<br><br>**ORDER** |

Defendants JPMorgan Chase Bank, N.A. ("Chase") and U.S. Bank National Association as Trustee for J.P. Morgan Mortgage Acquisition Trust 2006-CH2, Asset Backed Pass-Through Certificates, Series 2006-CH2 ("U.S. Bank"), filed a motion to dismiss Plaintiffs Michael and Angela Wassef's amended complaint. Doc. 7. The motion has been fully briefed and neither party has requested oral argument. Docs. 15, 17. For the reasons that follow, the Court will grant the motion and will dismiss the amended complaint with prejudice.

**I.     Background.**

In May 2006, Plaintiffs borrowed $556,400 subject to a promissory note (the "Note") from Defendant Chase Bank, N.A. ("Chase") to refinance a home in Litchfield Park, Arizona (the "Property"). Amended Complaint ("AC"), ¶¶ 6-7. Plaintiffs secured the Note with a deed of trust on the Property ("DOT"). *Id.*, ¶ 7. Approximately three

years later, Chase assigned the DOT to U.S. Bank as Trustee for J.P. Morgan Mortgage Acquisition Trust 2006-CH2, Asset Backed Pass-Through Certificates, Series 2006-CH2. *Id.*, ¶ 8. The Assignment was recorded in the Maricopa County Recorder's Office on April 3, 2009. *Id.*

On February 12, 2010, Plaintiff Michael Wassef entered into a Home Affordable Modification Agreement ("Modification Agreement") with Chase. *Id.*, ¶ 9. Plaintiffs made payments according to the terms of the new agreement until September, 2011, when they encountered financial difficulties and were unable to continue their payments. *Id.*, ¶ 10. Plaintiffs allege that on March 12, 2012, Chase entered into a repayment plan with them ("Repayment Agreement") in which they agreed to make a down payment on their arrearages of $12,800 by March 30, 2012, and resume monthly payments under the modification agreement of $4,562.89 per month plus continued arrearage payments of $1,923.49 a month. *Id.*, ¶¶ 11-13. In exchange, Chase agreed not to take legal action and to reinstate the Modification Agreement as if no default had occurred. *Id.*, ¶ 12.

Plaintiffs allege that on March 30, 2012, they made a timely down payment of $12,800 via Western Union as required under the Repayment Agreement, but Chase representatives began calling them to say that no payments had been received, and a representative informed them that Chase had no record of the alleged Repayment Agreement. *Id.*, ¶¶ 14-15.

Plaintiffs allege that on April 29, 2012, they made a subsequent monthly payment plus arrearages of $6,486.38. *Id.*, ¶16. Thereafter, in May, 2012, a Chase representative delivered a yellow envelope to their door stating they had not made payments for more than 45 days. *Id.*, ¶ 17. Later, during an in-person meeting at the Chase Homeownership Center in Phoenix, Arizona, a Chase representative stated that Chase had "rejected" the March 30 and April 29 payments. *Id.*, ¶ 18.

Plaintiffs allege that on May 29, 2012, they made their second monthly payment plus arrearages through Western Union as required by the Repayment Agreement. *Id.*, ¶ 19. The three payments they made under the agreement to that point totaled

$25,772.76. *Id.*, ¶ 20.  Chase informed Plaintiffs in June of 2012 that they should make no further payments under the Repayment Agreement and that their previous payments would be refunded by Western Union. *Id.*, ¶¶ 21-22.  Plaintiffs made repeated calls to Western Union and did not receive their refunded payments until August 17, 2012. *Id.*, ¶¶ 22-23.  At that time, Chase informed Plaintiffs that their Repayment Agreement had been cancelled because it did not meet "investor repayment guidelines," and stated that resumption of the Modification Agreement would require a down payment of $25,000 to $30,000 and monthly payments of $11,000 through August of 2013. *Id.*, ¶ 24.  Plaintiffs stated that they could not meet these requirements. *Id.*

On September 11, 2012, Plaintiffs sent a letter to Chase demanding that it reinstate the Repayment Agreement with an extension of the repayment schedule to account for its failure to credit Plaintiff's payments. *Id.*, ¶ 26.  Chase did not respond, and on September 20, 2012, California Reconveyance Company, successor Trustee on the DOT, recorded a Notice of Trustee's Sale for a sale of the Property scheduled to take place December 20, 2012. *Id.*, ¶ 27.  To date, no trustee sale has been held. Doc. 7 at 2.

Plaintiffs, who are represented by counsel, filed an amended complaint in which they alleged nine claims for relief: (1) breach of contract/implied covenant of good faith and fair dealing against Chase, (2) unjust enrichment against Chase, (3) consumer fraud against Chase, (4) promissory estoppel against Chase, (5) specific performance/equitable reformation against Chase, (6) declaratory judgment against Chase, (7) punitive damages against Chase, (8) violation of the Fair Debt Collection Practices Act against Chase, and (9) violation of A.R.S. § 33-420 against U.S. Bank.  A.C. ¶¶ 28-75.

**II.  Legal Standard.**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are

insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is appropriate where the complaint lacks a cognizable legal theory, lacks sufficient facts alleged under a cognizable legal theory, or contains allegations disclosing some absolute defense or bar to recovery. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir. 1997).

**III.   Defendants' Motion to Dismiss.**

   **A.   Count One: Breach of Contract/Implied Covenant of Good Faith.**

Plaintiffs' first claim for relief rests on allegations that Chase breached the Repayment Agreement under which it allegedly agreed to forgo legal enforcement of the DOT and to reinstate the Modification Agreement as if no default had occurred. A.C. ¶ 29. Chase asserts that the Repayment Agreement is not an enforceable contract because Plaintiffs merely agreed to meet obligations they already had, something that does not constitute adequate consideration for a valid contract. Doc. 7 at 5-6. The Court agrees.

For a valid contract to exist, "there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Norman v. State Farm Mut. Auto. Ins. Co.*, 33 P.3d 530, 532(Ariz. Ct. App. 2001). "A promise lacks consideration if the promisee is under a preexisting duty to counter-perform." *Travelers Ins. Co. v. Breese*, 675 P.2d 1327, 1330 (Ariz. Ct. App. 1983); *see also Hisel v. Upchurch*, 797 F. Supp. 1509, 1521 (D. Ariz. 1992) ("A well-established principle of consideration is that 'giving a party something to which he or she has an absolute right is not consideration to support that party's contractual promise.'") (internal citation omitted).

Plaintiffs argue that the Repayment Agreement was supported by consideration because the express language of the agreement states that it is "in consideration of the Recitals above, the mutual promises contained herein and the benefits accruing to the

parties hereunder." Doc. 15 at 4. Absent allegations of any obligations in addition to or separate from their pre-existing duty to perform under the original DOT and the Modification Agreement, however, Plaintiffs' mere reliance on the formalistic language of the Repayment Agreement is unavailing.

Plaintiffs argue that Chase received consideration for the Repayment Agreement because it had more rights under that agreement than it would have had through immediate foreclosure – had Chase proceeded with foreclosure, Plaintiffs would no longer have been obligated to make payments, and, under A.R.S. § 33-814 (G), Chase would not have been able to recoup any deficiency. Doc. 15 at 4-5. The Court is not persuaded. When Plaintiffs signed the Repayment Agreement, Chase had not initiated foreclosure and Plaintiffs remained contractually obligated under the Note and the Modification Agreement to cure their default. As this district found under similar facts in *Salgado v. Am.'s Servicing Co.*, No. CV-10-1909-PHX-GMS, 2011 WL 3903072, at \*2 (D. Ariz. Sept. 6, 2011), Plaintiffs could not have given up any rights under Arizona's anti-deficiency statute, which applies only in the event of foreclosure, when foreclosure proceedings had not yet begun. As in *Salgado*, Plaintiffs' pre-foreclosure obligation to pay arrearages greater than the partial payments agreed to under the Repayment Agreement renders that agreement unenforceable for lack of consideration. *See id.* ("[B]y asserting that he paid less than the note obliged him to pay, Plaintiff has made no plausible allegation that the agreement was supported by consideration."). Because Plaintiffs have failed to allege facts showing that the Repayment Agreement was supported by consideration and that it was, therefore, a legally enforceable contract, Plaintiffs' breach of contract claim fails.

The lack of an enforceable contract is also fatal to Plaintiffs' breach of the covenant of good faith and fair dealing claim. *See Norman v. State Farm Mut. Auto. Ins. Co.*, 33 P.3d 530, 532 (Ariz. Ct. App. 2001) ("[W]e reiterate the well-settled principle that a contract must exist before there can be a breach of the covenants of good faith and fair dealing implied in every contract."). The Court will dismiss count one.

### B. Count Two: Unjust Enrichment.

Plaintiffs allege that Chase has been unjustly enriched at their expense. A.C. ¶ 37. Unjust enrichment is a claim in equity that Plaintiffs put forth as an alternative to their breach of contract claims. Doc. 15 at 5. "In Arizona, five elements must be proved to make a case of unjust enrichment: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment; and (5) an absence of a remedy provided by law." *Community Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995) (citations omitted).

Chase argues, and the Court agrees, that Plaintiffs have failed to allege facts to support the necessary elements of this claim. Doc. 7 at 7. Specifically, they have failed to allege that Chase was enriched, that they were impoverished, or that these results, to the extent Plaintiffs have attempted to allege them, were unjust. *See id.*

To the extent that Plaintiffs' claim rests on the alleged payments they made to Chase pursuant to the Repayment Agreement, Plaintiffs do not dispute that Chase was entitled to these payments as partial compensation for Plaintiffs' failure to meet its monthly payment obligations under the original Note and Modification Agreement. *See* A.C. ¶¶ 9-13. This fact negates any assertion that either the "enrichment" Chase received or the corresponding "impoverishment" Plaintiffs incurred was unjust. Moreover, even accepting Plaintiffs' theory that the payments made under the Repayment Agreement were somehow unjust because they were induced by misrepresentation on the part of Chase, it is undisputed that Chase returned the payments, thereby obviating any remaining ground for unjust enrichment. *See* A.C. ¶¶ 22-24; Doc. 15 at 2, 5.

To the extent that Plaintiffs' unjust enrichment claim rests on the noticed foreclosure sale of the Property, this also is not an adequate basis for showing either that Chase was unjustly enriched or that Plaintiffs were unjustly impoverished. First, Plaintiffs have alleged no facts showing that Chase gained financially by initiating foreclosure or that Plaintiffs suffered impoverishment as a result. To the contrary, Chase

asserts, and Plaintiffs do not dispute, that no foreclosure sale has taken place and Plaintiffs have continued to reside in the Property for months despite their default. Docs. 7 at 2; 17 at 4. Second, even if Plaintiffs could show an enrichment to Chase and a corresponding impoverishment to themselves should the foreclosure sale proceed, Plaintiffs acknowledge that they defaulted on the Modification Agreement and that the payments they proffered under the Repayment Agreement, even if credited, only partially covered their past arrearages. The Court cannot conclude that foreclosure under these circumstances would be unjust. The Court will dismiss count two.

### C. Claim Three: Consumer Fraud.

To state a claim for consumer fraud under A.R.S. § 44-1522, a Plaintiff must allege "a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise." *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004). Plaintiffs allege both that Chase made false promises and misrepresentations in connection with the Repayment Agreement and that Plaintiffs suffered damages as a result. A.C. ¶¶ 40, 42.

Chase argues that Plaintiffs' consumer fraud claim fails because Plaintiffs fail to plead with particularity the time, place, and parties to the alleged misrepresentations as required under Federal Rule of Civil Procedure 9(b). Doc. 7 at 7-8; *see* Fed. R. Civ. P. 9(b) ("a party must allege with particularity the circumstances constituting fraud or mistake."); *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged); *A.G. Edwards & Sons, Inc. v. Smith*, 736 F. Supp. 1030, 1033 (D. Ariz. 1989) (same). Chase also argues that Plaintiffs have suffered no injury as the basis for this claim. Doc. 17 at 5.

It is questionable whether A.R.S. § 44-1522, which applies to misrepresentations "in connection with the sale or advertisement of any merchandise," applies to Chase's alleged misrepresentations in the Repayment Agreement given that that agreement did not involve the sale or advertisement of merchandise and even the DOT to which it

relates involved only a refinancing of Plaintiffs' home. The Court need not reach this question or the question of whether Plaintiffs have met the particularity requirements of Rule 9(b). Instead, the Court finds that the lack of actual damages, as noted with respect to Plaintiffs' first two claims, is fatal to any consumer fraud claim. Plaintiffs have not alleged that they made any payments under the Repayment Agreement that they were not already obligated to make, nor that Chase's alleged fraudulent misrepresentations with respect to the Repayment Agreement have left Plaintiffs worse off than before Chase allegedly proffered that agreement. The lack of "consequent and proximate injury resulting from the [false] promise" to forgo foreclosure is fatal to Plaintiffs' consumer fraud claim. *Kuehn*, 91 P.3d at 351. The Court will dismiss count three.

### D.   Claim Four: Promissory Estoppel.

Plaintiffs' claim of promissory estoppel, like their unjust enrichment claim, is a claim for equitable relief predicated on the allegation that Chase promised to forgo enforcing the terms of the DOT and to reinstate Plaintiffs' Modification Agreement in exchange for specified payments, and that Plaintiffs justifiably relied on this promise to their detriment. A.C. ¶¶ 45-47. Plaintiffs allege, in particular, that Chase's promise induced them to make the March, April, and May payments and not to make the subsequent June payments. *Id.*, ¶ 46. This claim also fails because Plaintiffs have failed to allege facts showing that their actions in reliance on Chase's alleged promise caused them injury.

As set forth in the amended complaint, Plaintiffs' March, April, and May payments consisted of partial payments of amounts already owed to Chase under the DOT and Modification Agreement. Again, Plaintiffs cannot claim damages for paying what they already owed. Plaintiffs' non-payment in June following Chase's instruction that they make no further payments under the Repayment Agreement also does not show injury. To the extent that Plaintiffs imply that they were injured because they were unwittingly led to believe that they no longer had to make any payments, this assertion is belied by Plaintiffs' own allegations that Chase informed them that the Repayment

Agreement did not meet "investor repayment guidelines" and that reinstatement of the Modification Agreement would require adherence to new payment terms. A.C. ¶ 24.

Plaintiffs no doubt suffered inconvenience and frustration in making a number of payments in the expectation of curing their default, only to have those payments rejected and reimbursed after considerable delay. But Plaintiffs have not alleged facts plausibly showing that they were made materially worse off by the actions they took in reliance on Chase's promises such that equity can only be served if those promises are enforced. *See* Restatement (Second) of Contracts § 90(1) (requiring for purposes of promissory estoppel that "injustice can be avoided only by enforcement of the promise"); quoted in *Double AA Builders, Ltd. v. Grand State Const. L.L.C.*, 114 P.3d 835, 839 (Ariz. Ct. App. 2005). Plaintiffs are in at least the same or better position than they were before they relied on Chase's promises because the payments they made were smaller than the amounts they owed, the payments have nonetheless been fully refunded, and Plaintiffs have been able to remain in the Property despite default. The Court has no basis in equity to enforce an otherwise non-binding promise, reliance on which did not leave Plaintiffs materially worse off than if the promise had not been made.

### E. Claim Five: Specific Performance/Equitable Reformation.

Plaintiffs' specific performance claim is predicated on the assertion that the Repayment Agreement constitutes an enforceable contract. This claim fails for the reasons already discussed with respect to Plaintiffs' breach of contract claim. Plaintiffs additionally seek "equitable reformation of the Repayment Agreement to the extent necessary to effect specific performance." A.C. ¶ 54. To the extent that Plaintiffs attempt to assert an additional claim in equity, this claim fails for the reasons discussed with respect to counts two and four.

### F. Count Six: Declaratory Judgment.

Plaintiffs seek a judgment "declaring that the Repayment Agreement is fully enforceable against Chase" and had been breached. A.C. ¶¶ 59-60. A request for declaratory judgment is a remedy, not a separate cause of action. *See Silvas v. GMAC*

*Mortgage, L.L.C.*, No. CV-09-265-PHX-GMS, 2009 WL 4573234, at *7 (D. Ariz. Dec. 1, 2009). For this reason, and because the Court has already dismissed Plaintiffs' breach of contract claim, the Court will dismiss count six.

### G. Count Seven: Punitive Damages.

Plaintiffs allege that they are entitled to punitive damages because Chase's conduct "was malicious, shows spite or ill will, and demonstrates a reckless indifference to Plaintiffs' interests." A.C. ¶ 64. Chase argues, and the Court agrees, that because Plaintiffs have failed to show actual damages, they lack sufficient grounds to assert a claim for punitive damages. *See Medasys Acquisition Corp. v. SDMS*, P.C., 55 P.3d 763, 766 (Ariz. 2002) ("The traditional rule requires an award of actual damages before punitive damages may be awarded, and we adhere to that rule.").

### H. Count Eight: Violation of the Fair Debt Collection Practices Act.

Plaintiffs allege that Chase's conduct violated several provisions of the Fair Debt Collection Practices Act ("FDCPA"), including that a "debt collector" may not engage in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt" (15 U.S.C. § 1692d), "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" (*Id.* at § 1692d), and "may not use unfair or unconscionable means to collect or attempt to collect any debt" (*Id.* at § 1692e). *See* A.C. ¶ 70.

Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. § 1692a(6). This definition does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." *Id.* at 1692a(6)(A).

Plaintiffs do not allege that Chase is a business "the principal purpose of which is the collection of any debts." Nor do they allege that Chase regularly collects or was attempting to collect any debts "owed or due or asserted to be owed or due another."

1 Rather, the allegations respecting Chase's collection activities all pertain to the mortgage-related debt Plaintiffs acknowledge owing to Chase itself.  *See* A.C. ¶ 7.  As the above-cited definition makes clear, the FDCPA has no application to Chase's alleged misconduct in attempting to collect a debt in its own name.

The legislative history of the Act further supports that it was proposed to address "serious and widespread abuses" by "third party debt collectors" and was not intended to apply to "the collection of debts, such as mortgages and student loans, by persons who originated such loans."  S. Rep. No. 95-382 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, at 1696-98, 1977 WL 16047.  Courts have routinely found that the Act does not apply to mortgagees, their beneficiaries, or mortgage service companies.  *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (finding that neither mortgage servicing company nor pre-default assignee on promissory note were debt collectors); *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009) (an assignee, a servicing company, and a fiduciary were not debt collectors under the FDCPA); *Bergdale v. Countrywide Bank FSB*, No. CV-12-8057-PCT-GMS. 2012 WL 4120482 at *8 (D. Ariz. Sept. 18, 2012) (mortgagees and their beneficiaries are not debt collectors under the FDCPA).

Plaintiffs argue that Chase is subject to the FDCPA because it identified itself as a "debt collector" in its own correspondence.  Doc. 15 at 7.  Chase acknowledges that it identified itself as the "lender" or "servicer" of Plaintiffs' debt, and that it routinely uses boiler-plate language in its correspondence to indicate that it is collecting a debt, but it argues that this does not mean it is a "debt collector" for purposes of the FDCPA when the definition under that Act does not otherwise apply.  Doc. 17 at 6; 6 nn. 2 & 3.  For the reasons stated above, the Court agrees.  The Court will dismiss count eight.

**I.     Count Nine: Violation of A.R.S. § 33-420.**

Plaintiffs allege that U.S. Bank caused a Notice of Trustee's Sale to be recorded with the Maricopa County Recorder's Office "knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is

1 otherwise invalid" in violation of A.R.S. § 33-420.  A.C. ¶ 74.  Plaintiffs acknowledge
2 that their assertion that the Notice of Trustee's Sale is groundless rests entirely on their
3 allegations that Chase breached the Repayment Agreement or, in the alternative, should
4 be equitably estopped from rescinding that agreement.  Doc. 15 at 7.  As previously
5 discussed, Plaintiffs have failed to allege facts showing that the Repayment Agreement
6 was a legally-binding contract or that they otherwise are entitled to equitable relief.
7 Plaintiffs have also failed to allege facts showing that U.S. Bank knew or should have
8 known of Plaintiffs' attempts to cure their default.  Finally, courts in this district have
9 routinely found that A.R.S. § 33-420, which pertains to recording documents "purporting
10 to claim an interest in, or a lien or encumbrance against, real property," does not apply to
11 a Notice of Trustee sale.  *See Bergdale*, 2012 WL 4120482, at *4 (citing cases and
12 concluding that "notices of trustee's sale do not 'create an interest' in property such that
13 A.R.S. § 33–420 applies.").  Plaintiffs fail to state a claim under A.R.S. § 33–420.

**IV.     Plaintiffs' Request for Leave to Amend.**

Plaintiffs ask the Court to grant leave to amend.  Doc. 15 at 9.  Rule 15 of the Federal Rules of Civil Procedure declares that courts should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  While "this mandate is to be heeded," leave to amend may be denied if the amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court has dismissed Plaintiffs' breach of contract and breach of the implied covenant of good faith and fair dealing claims because Plaintiffs' allegations fail to show that the Repayment Agreement was a binding contract supported by consideration. Plaintiffs, with full knowledge of the facts of that agreement, have failed to identify any contractual obligations that required them to do more than they were already obligated to do.  Thus, leave to amend those claims would be futile.  Plaintiffs' consumer fraud, punitive damages, FDCPA, and A.R.S. § 33-420 claims similarly fail as a matter of law because, as fully discussed above, the facts upon which Plaintiffs rely fail to support necessary elements of those claims.  Because it does not appear from Plaintiffs' amended

1  complaint or the arguments put forth in response to the motion to dismiss that any new
2  facts could avoid the fatal deficiencies of those claims, leave to amend those claims
3  would be futile.  Finally, granting Plaintiffs leave to amend its remaining claims in equity
4  would be futile because Plaintiffs acknowledge that they were in default on the
5  Modification Agreement for an amount greater than they proffered under any subsequent
6  payment plan, and this prevents the Court from finding either the collection of partial
7  payments from Plaintiffs (subsequently returned) or the noticed trustee's sale under the
8  terms of the DOT unjust.  In sum, the Court denies leave to amend because it finds that
9  amendment would be futile with respect to all claims.

10 **IT IS ORDERED:**

11  1. Defendants' motion to dismiss (Doc. 7) is **granted**.
12  2. Plaintiffs' amended complaint is **dismissed with prejudice**.
13  3. The Clerk of the Court is directed to **terminate** this matter.
14  Dated this 15th day of March, 2013.

_____
David G. Campbell
United States District Judge